# Exhibit A



Please return signed contract to:
Ronn Breaux
Top Step
1 Galleria Blvd, Suite 1900, Metairie, LA 70001
rbreaux@topstepllc.com

# CONSULTING AGREEMENT

**THIS CONSULTING AGREEMENT** ("Agreement") is made as of this August 11, 2022 by and between Top Step Consulting ("Top Step"), a Louisiana corporation with office at 1 Galleria Blvd., Suite 1900, Metairie, LA 70001, and AML RightSource ("Client") with offices at 1300 E 9th Street Suite 200 Cleveland, OH 44114.

WHEREAS, Client wishes to engage Top Step, and Top Step has agreed to perform certain services for Client; THEREFORE, the parties agree:

**ARTICLE 1**
**TERM**

Top Step performance under this Agreement shall commence upon date of signature unless terminated earlier pursuant to Article 11 set forth hereafter. This Agreement may be extended by Amendment subject to mutual agreement. The expiration or termination of this Agreement shall not terminate vested rights of either party from any liabilities or obligations incurred under this Agreement prior to and which by their nature are intended to survive expiration or termination. This includes but is not limited to the confidentiality provisions of this Agreement.

**ARTICLE 2**
**ACTIVITIES/SERVICES**

(a) Client shall pay Top Step rates for services defined in Exhibit 1.

(b) The services to be performed by Top Step are detailed on the Statement of Work and attached hereto and made a part hereof as Exhibit #1 ("Services").

(c) Client will reimburse Top Step for reasonable travel and living expenses approved in advance in writing by Client.

(d) Top Step shall submit monthly invoices to Client setting forth the Services delivered. Client shall pay undisputed invoices Net 30 upon receipt thereof.

(e) In the event Client fails to pay an undisputed invoice within sixty (60) days of receipt thereof, then the past due invoice amounts shall bear interest at the lesser of 1 1/2% per month or the maximum rate allowed by law.

(f) All payments under this Agreement are exclusive of taxes. Employment related taxes shall be paid by Top Step or its employees, as applicable. All other taxes, including, without limitation, sales, use, or like taxes shall be paid by Client.

(g) Billing contact to send invoices: ap@amlrightsource.com
_____
_____
_____
_____

(h) Is a PO required? Yes/No   No

## ARTICLE 3
## RELATIONSHIP OF THE PARTIES

Top Step agrees that it shall be acting as an independent contractor and shall not be considered or deemed to be an agent, employee or partner of, or joint venture with, Client. Top Step shall have no authority to contract for or bind Client in any manner and Top Step shall not represent itself as being an agent of Client or as authorized to act for or on behalf of Client, apart from interaction as necessary to provide Services herein; i.e. for approved system administration activities. Top Step shall have no status as an employee of Client. Client shall not be responsible to Top Step or its employees and subcontractors for payroll-related taxes, fringe benefits, including health insurance benefits, paid vacation or any other employee benefits.

## ARTICLE 4
## PERFORMANCE

Top Step agrees to perform Services on behalf of Client which are specified in Exhibit 1, with the personnel, rates and for the periods of time specified in this Agreement. Top Step will keep Client informed on a regular basis of problems and concerns that may affect the quality or schedule of any project. Top Step will exercise best efforts to complete these tasks in a timely and professional manner.

## ARTICLE 5
## CONFIDENTIALITY

"Confidential Information" shall mean information in any form or medium (whether oral, written, electronic, or other) that the Disclosing Party considers confidential or proprietary, including information consisting of or relating to the Disclosing Party's products, research activities, technology, trade secrets, know-how, business operations, plans, strategies, clients, pricing, employees, and information with respect to which the Disclosing Party has contractual or other confidentiality obligations, in each case whether or not marked, designated or otherwise identified as "confidential". Confidential Information shall not include any information of the Disclosing Party that:

(a) is now in the public domain or which subsequently enters the public domain without fault on the part of the Receiving Party;

(b) is presently known by the Receiving Party from its own sources where such knowledge is evidenced by written records or otherwise sufficiently substantiated;

(c) the Receiving Party receives in good faith from a third party where such third party is independent of the Disclosing Party and the Receiving Party has no knowledge of such third party obtaining the information by wrongful means or that such third party is prohibited from disclosing such information by a legal, contractual or fiduciary obligation;

(d) is approved for release by written authorization of Disclosing Party; or

(e) is independently developed by Receiving Party without use of Confidential Information as evidenced by its written or electronic records.

Each party agrees to use Confidential Information received from the other party only in furtherance of the Purpose outlined herein. For the avoidance of doubt, all client information of HDI shall be considered Confidential Information.

The Receiving Party agrees to hold in confidence, not publish and not disclose to any third party any of the Confidential Information of the Disclosing Party, without the prior written consent of the Disclosing Party unless otherwise specified herein. The Receiving Party agrees to use the same care to avoid disclosure of the Confidential Information as it uses with its own similar Confidential Information, but in any case, not less than reasonable care. The Receiving Party may disclose Confidential Information to (a) its employees and the employees of its corporate affiliates ("Affiliate Employees") who have a need to know and are covered by confidentiality guidelines and policies of the Receiving Party or the corporate affiliate no less stringent than the obligations herein; (b) its contractors, agents and representatives ("Representatives") who have a need to know and who are subject to a written confidentiality agreement with terms at least as restrictive as those contained in this Agreement; and (c) any other party with the Disclosing Party's prior written consent. The Receiving Party shall be liable for any breach of this Agreement by its Affiliate Employees and Representatives to whom Confidential Information is disclosed hereunder. Notwithstanding the foregoing, it is understood that, where applicable, HDI may disclose Vendor Confidential Information to HDI's clients.

The Receiving Party shall not remove any proprietary, copyright, trade secret or other legend from any form of the Confidential Information. The Receiving Party shall not copy or reproduce, in whole or in part, any Confidential Information without written authorization of the Disclosing Party, except as is reasonably required to accomplish the Purpose. The Receiving Party agrees that should any unauthorized disclosure or use of the Confidential Information be made by the Receiving Party, its employees or Affiliate Employees or its Representatives, the Receiving Party will (a) immediately notify the Disclosing Party of the same; (b) take all reasonably necessary steps to prevent further unauthorized disclosure and/or use; and (c) cooperate with the Disclosing Party in its efforts to secure the Confidential Information and protect the Disclosing Party's proprietary rights therein.

**ARTICLE 6**
**WARRANTY**

Top Step represents and warrants that:

(a) Top Step shall perform all Services with due diligence, in a timely and workmanlike manner, and in accordance with written specifications provided in the Statement of Work, or in the absence of such specifications, in accordance with generally accepted professional standards and, where applicable, standards imposed by law for comparable or similar services.  And

(b) In the course of providing Services, Top Step shall not knowingly violate or infringe upon any U.S. patent, copyright or trade secret of a third party.

(c) This warranty will be in effect for a period of thirty (30) days from the completion of the applicable Services or until Client or any third party makes changes to Services in dispute or the underlying environment, whichever occurs first. ("**Warranty Period**").

(d) Corrections/Repairs.  If during the Warranty Period, Top Step receives written notice from Client of non-conformity with the performance of the Services set forth in Article 6, Top Step shall at its sole option and expense, promptly re-perform any Services that fail to meet this warranty or refund Client the fees paid for the non-conforming Services.  THE FOREGOING STATES CLIENT'S SOLE AND EXCLUSIVE REMEDY FOR WARRANTY CLAIMS.

(e) IT IS EXPRESSLY AGREED THE FOREGOING WARRANTY IS MADE IN LIEU OF ALL OTHER WARRANTIES OF ANY KIND WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND CONSTITUTES THE ONLY WARRANTY OF CONSULTANT WITH RESPECT TO ALL SERVICES.

Client represents and warrants:

(a) That it has the authority to enter into this Agreement and perform all its obligations under this Agreement,
(b) For any intellectual property provided by Client will not knowingly infringe upon any U.S. patent, copyright or trade secret of a third party, and
(c) That it will respond within reasonable time to Top Step's requests for decisions and provide necessary information, resources and documents pertaining to Services.

**ARTICLE 7**
**INDEMNIFICATION**

INDEMNIFICATION.  Top Step shall indemnify, defend and hold Client harmless from and against loss, damage, claims, allegations, demands, suits, and expenses, including but not limited to reasonable attorneys' fees, to the extent that the Services or deliverables provided by Top Step under this Agreement or Client's authorized use thereof infringes on any patent, copyright, trade secret, or other intellectual property or contract rights of a third party that is enforceable in the United States of America.

Exception to Intellectual Property Indemnification.  Top Step will have no defense or indemnity obligation for any infringement claim based upon (i) any use of Services or deliverables other than in accordance with the specifications under this Agreement; (ii) Services or deliverables that have been modified by someone other than Top Step, if such modification results in the allegation of the infringement;  (iii) use or combination of Services or deliverables with third party work, if such use or combination results in the

infringement; (iv) any refusal to accept or use suitable modified or replacement Services or deliverables provided by Top Step to avoid infringement; (v) the negligent or unlawful or wrongful acts of Client or any Affiliate or other person acting in concert with Client; or (vi) infringement caused by infringing conduct that was directed or required by Client.

With respect to infringement claims, if a third party claims that Top Step's performance of Services or deliverables infringes any patents, copyrights, trademarks, trade secrets, or other intellectual property rights or if Top Step reasonably believes that use of such Services or deliverables may become the subject of an indemnification claim, then Top Step shall, at its option, in addition to Top Step's other obligations herein, either (i) procure for Client the right to continue using the Services or deliverables; (ii) after consultation with Client, replace or modify the Services or deliverables to provide functionally equivalent, non-infringing Services or deliverables without causing any degradation to such; (iii) settle such claim (iv) defend against such claim or (v) refund all amounts paid for the infringing Services or deliverables less a reasonable amount for depreciation.  THIS PARAGRAPH SETS FORTH Top STEP'S EXCLUSIVE LIABILITY AND AN INDEMNIFIED PARTY'S SOLE AND EXCLUSIVE REMEDIES WITH RESPECT TO ANY INFRINGEMENT OR MISAPPROPRIATION ACTION.

Top Step's obligation to indemnify under this Agreement is predicated upon Client  (a) giving prompt written notice of any Loss or the commencement or the threat of commencement, of such suit, liability, or claim that is covered by the indemnification provided under this Agreement, whichever is learned of first;, (b) giving the Top Step the opportunity to assume sole control over the defense and settlement, if applicable, of the Loss, (c) making no admission of fault or liability without Top Step's prior written consent and (c) providing, at Top Step's sole expense, all reasonably requested and relevant information, assistance and authority to enable Top Step to perform its obligations hereunder.  Top Step agrees not to settle any indemnification claim that materially adversely affects Client's right of interests, without Client's written consent, which will not be unreasonably withheld.

## ARTICLE 8
## LIMIT OF LIABILITY

EXCEPT AS PROVIDED FOR SPECIFICALLY IN THIS AGREEMENT, NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR ANY LOSS OF PROFITS, REVENUE, DATA OR DATA USE, EVEN IF THE PARTY SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH POTENTIAL LOSS OR DAMAGE. EACH PARTY'S MAXIMUM LIABILITY ARISING OUT OF THIS AGREEMENT SHALL NOT EXCEED FEE(S) PAID TO TOP STEP BY CLIENT FOR WORK ASSIGNMENT CREATING THE LIABILITY.

## ARTICLE 9
## NOTICE

All notices or communications given or sent to either party must be made by Certified Mail, return receipt requested, in a postage prepaid letter or recognized overnight courier addressed as follows:

Top Step Consulting:

Ronn Breaux
Top Step Consulting
1 Galleria Blvd. Suite 1900
Metairie, LA 70001

Client:

AML RightSource
1300 E 9th Street Suite 200
Cleveland, Ohio 44114
Attn: General Counsel

Either party may provide the other with notice of a change in mailing or email address pursuant to the requirements of this Article 9, in which case the mailing address, for that Party will be deemed to have been amended. Any such notice or communication so deposited will be deemed to have been given to the addressee on the date upon which the return receipt is executed by the party to be notified or in the case of the courier upon delivery.

**ARTICLE 10**
**FORCE MAJEURE**

Notwithstanding any other provisions of the Agreement, no failure, delay or default in performance of any obligation hereunder shall constitute an event of default or a breach of this Agreement, to the extent that such failure to perform, delay or default arises out of causes beyond the control and without the fault or negligence of the party otherwise chargeable with failure, delay or default, including, but not limited to, acts of God, acts of war or terrorism, civil or military disturbances, fire, cyber-attack, pandemic, theft, natural disasters, strikes or other labor troubles, or interruption, loss or malfunctions of utilities, communications or computer (software or hardware) services.

**ARTICLE 11**
**TERMINATION**

Termination for Convenience. This Agreement may be terminated for convenience by Client upon written notification to Top Step prior to any requested termination date. In the event Client thus terminates this Agreement for convenience, Client agrees to pay Top Step for all completed work effort up to the date of termination.

Termination for Default. Failure by either party to comply with any term or condition of this Agreement shall entitle the other party to give the defaulting party written notice requiring it to cure such default. If the party in default has not cured such default within thirty (30) days after receipt of notice or, if not remediable within such thirty (30) days, the defaulting party has not undertaken significant efforts to cure, the notifying party shall be entitled, in addition to any other rights it may have under this Agreement or otherwise, to terminate this Agreement by giving notice to take effect immediately.

**ARTICLE 12**
**ENTIRE AGREEMENT**

The terms and conditions of the Agreement, including any attachments hereto, constitute the entire agreement between the parties and supersedes all previous communications, representations, or agreements, either written or oral, with respect to the subject matter hereof. No modification or amendment of this Agreement will be binding on either party unless acknowledged in writing by their duly authorized representation. This Agreement may be executed by facsimile or scanned and electronic signatures. Any reproduction of this Agreement made by reliable means is considered an original.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement to be effective as of the date first above written.

**Client**

By: *Sam Lauritzen*
    —DocuSigned by—
    9A3D8E52C6EF424...

Name/title: Sam Lauritzen

Date: 9/12/2022

**Top Step Consulting**

By: *Ronn Breaux*
    —DocuSigned by—
    B9059229362246A...

Name/title: Ronn Breaux

Date: 9/12/2022

Page 7 of 9

# EXHIBIT 1
# STATEMENT OF WORK 1

**Scope of Work**
OpenAir deployments are most successful when a proven methodology is applied. Below are the stages of the Top Step's methodology used in many implementations, refined with each deployment to pass along the best practices from lessons learned.

Top Step Methodology
- Business Requirements Workshop with Requirements Document
- System Configuration
- System Validation and UAT
- Data collection and migration
- Training
- Production Readiness/Go-live
- Go-live support and System Stabilization

**Requirements Workshop**
The Process Workshop provides a base understanding of your current business model. We focus on how you want to run the business before we recommend OpenAir configurations and usage. Areas to concentrate on include:
- Resource Management
- Current reports used within the organization

The key to successful system usage is knowing what needs to be handled within your business; therefore, we work with you to gather detailed reporting needs and processes in place.

Attendance by the decision makers of the company provides a dynamic atmosphere for process impact discussions as well as system configuration. The process workshop is anticipated to be a series of 2-hour remote working session with key system administrator and management personnel.

**Preparation requirements for the Workshop by AML RightSource:**
- Business process knowledge of today and desired.
- Reports (or spreadsheets) used to manage the business (operations, finance, etc.)
- Information desired to get out of OpenAir to complete management activities

**Deliverable:** Business Requirements documentation

**Assumption**
- Top Step Consulting will be granted direct access to the AML RightSource NetSuite sandbox platform.

**Schedule and Price**
**Schedule**

Page 8 of 9

AML RightSource will schedule the Business Requirements Workshop mutually with Top Step Consulting. A 1-2 week timeframe is anticipated to complete the entire deployment of OpenAir's Resource Module. Extensions to this timeframe may result in increased cost to the project.

**Pricing**

Top Step business consulting efforts are offered at a discounted $200/hr and estimated as a T&M. Effort below should not be considered to be a cap or fixed effort, only an estimate based on initial conversations.

| Description | Effort (hrs) | Pricing |
|---|---|---|
| Process Workshop & Design Document | 12 | |
| **Phase 1 Total** | **12** | **2400** |

**Travel**

No travel is expected for this SOW.